IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
EASTERN DIVISION
NO. 4:11-CV-169-FL

| | | |
|---|---|---|
| M. DALE SWIGGETT, )| | |
| Plaintiff, ) | | |
| ) | | |
| ) | | |
| v. ) | ORDER | |
| ) | | |
| PCS PHOSPHATE COMPANY, INC., ) | | |
| Defendant. ) | | |

This matter comes now before the court on defendant's motion to dismiss for lack of jurisdiction and motion for summary judgment,[1] plaintiff's counsel's motion to withdraw, plaintiff's motions filed during the time this case has been stayed pending resolution of the motion to dismiss and motion for summary judgment, and defendant's motion to strike. For reasons given below, counsel's withdrawal is allowed, the motion to dismiss allowed as well, plaintiff's remaining motions denied, and the motion to strike denied as moot.

BACKGROUND

Motion to dismiss and for summary judgment has ripened in the case without any response having been filed by plaintiff in this action, removed from Pamlico County Superior Court on October 5, 2011, due to diversity of the parties where the amount alleged in controversy exceeds the sum of $75,000.00. Plaintiff contends that defendant through its phosphate mining activity in Aurora, North Carolina, has caused subsidence of the earth's surface, substantial injury to lands and the improvements around it, increased salinity of groundwater, and contamination of wells to the

---

[1] On the docket at entry no. 27 appears defendant's motion to dismiss for lack of jurisdiction and motion for summary judgment, supported by lengthy memorandum of law at entry no. 28, with reference to various exhibits, plaintiff's deposition, filed at entry no. 29, and declarations appearing between entry nos. 30 and 35, including of defendant's counsel, C. Ray Holmes, Harvey Skip Lee, Mark Terry, Richard K. Spruill, and David A. Wiley.

point that they are unusable.   Plaintiff alleges that defendant's conduct has rendered the land on which plaintiff has built improvements 'virtually uninhabitable and unusable for his improvement purposes.' Plaintiff seeks compensatory damages as well as punitive damages in unspecified amounts.

Case management order was entered in December 2011, specifying among other things that discovery is to close on August 31, 2012.  Issues arose in discovery addressed in conference by the magistrate judge of or relating to defendant's provision of Rule 26 initial disclosures.  There was to be a show cause hearing March 5, 2012  where plaintiff's counsel had been admonished three times for failing to file a financial disclosure statement on behalf of plaintiff; however, prior to hearing this issue was rectified by plaintiff and the court discontinued the show cause hearing. Plaintiff filed at the same time a "modification of complaint".  That document was later stricken on defendant's motion.

At the end of April, defendant moved, with consent of plaintiff's counsel, to extend the mediation deadline where the parties did not believe mediation at the time set would be productive. The court allowed that motion.  While issues concerning plaintiff's counsel's failure to file notice of appearance in this case have persisted, discovery appears to have continued. Reference is made in the motion to withdraw to plaintiff's failure to pay costs associated with his deposition, and to his filing of petition in bankruptcy during pendency of the case without informing counsel, who reports himself as being named a creditor in the bankruptcy proceeding.  Defendant's response illuminates that the bankruptcy court dismissed plaintiff's action.  A motion to stay case deadlines, consented to by plaintiff, through counsel, was granted by the court following defendant's filing of its motion to dismiss and motion for summary judgment.  In the motion to stay, defendant expressly noted that

2

the time period for any response to the earlier filed motion to dismiss and motion for summary judgment had passed. Additional detail is provided concerning the course of the litigation to date in defendant's motion to stay.

COURT'S DISCUSSION

The court finds good cause to allow the motion to withdraw appearing on the docket at entry no. 39, and does relieve counsel for plaintiff of this representation. Turning next to the motions appearing at entry no. 27, the court focuses on the motion made pursuant to Rule 12(b)(1), resting its decision upon a determination that it is without subject matter jurisdiction.

**A. Standard of Review**

Federal Rule of Civil Procedure 12(b)(1) provides for the dismissal of an action if the court lacks subject matter jurisdiction. A party may attack subject matter jurisdiction on grounds that the complaint fails to allege facts upon which subject matter jurisdiction can be based, or on grounds that the jurisdictional facts in the complaint are not true. Adams v. Bain, 697 F.2d 1213, 1219 (4th Cir. 1982). In the later case, "the district court is to regard the pleadings' allegations as mere evidence on the issue, and may consider evidence outside the pleadings without converting the proceeding to one for summary judgment." Richmond, Fredericksburg & Potomac R. Co. v. United States, 945 F.2d 765, 768 (4th Cir. 1991).

Generally, when the jurisdictional facts are intertwined with the merits of the case, the court should "assume jurisdiction and proceed to the intertwined merits issues." Kerns v. United States, 585 F.3d 187, 193 (4th Cir. 2009). Nevertheless, an exception to this rule which defendants rely upon here exists where the claims are "wholly unsubstantial and frivolous." Id. The Supreme Court "has repeatedly held that the federal courts are without power to entertain claims otherwise within

their jurisdiction if they are 'so attenuated and insubstantial as to be absolutely devoid of merit, wholly insubstantial, obviously frivolous, plainly insubstantial, or no longer open to discussion.'" Davis v. Pak, 856 F.2d 648, 650-51 (4th Cir. 1988) (quoting Hagans v. Lavine, 415 U.S. 528, 536-37 (1974)).

In this case, defendant argues that plaintiff's jurisdictional allegations regarding subsidence and groundwater salinity are so frivolous as to be properly disposed of pursuant to Rule 12(b)(1), upon consideration of evidence and testimony in the record. Def's Mem. at 13. Defendant argues that plaintiff's allegations regarding his injury and causation are wholly unsupported by any competent, credible evidence, and that plaintiff therefore lacks standing to pursue his case. Id. at 14-21. Defendant also argues that plaintiff has failed to exhaust administrative remedies, thereby providing an additional jurisdictional basis for dismissal. Id. at 22-25. For the reasons set forth below, the court agrees that plaintiff's jurisdictional allegations are frivolous, and that the court lacks subject matter jurisdiction over this case.

**B. Analysis**

1. Standing

The court's "jurisdictional inquiry includes both constitutional and prudential aspects of standing." Gen. Tech. Applications, Inc. v. Exro Ltda, 388 F.3d 114, 118 (4th Cir. 2004). Constitutional standing requires a plaintiff to demonstrate (1) "an injury in fact" (2) a "causal connection between the injury and the conduct complained of"; and (3) a "likelihood that the injury 'will be redressed by a favorable decision.'" Benham v. City of Charlotte, N.C., 635 F.3d 129, 134 (4th Cir. 2011) (quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)). "[P]rudential standing encompasses the general prohibition on a litigant's raising another person's legal rights

4

. . . and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." Elk Grove Unified School Dist. v. Newdow, 542 U.S. 1, 12 (2004) (citations omitted). Constitutional standing is governed by federal law. See Phillips Petroleum Co. v. Shutts, 472 U.S. 797, 804 (1985).[2] Prudential standing, by contrast, requires reference to state law in a diversity case "to determine the nature of the litigant's rights and whether he is entitled to assert the claims he makes." Gen. Tech., 388 F.3d at 118.

      a. Injury in Fact and Causation

The most glaring deficiency in plaintiff's lawsuit is that plaintiff relies upon no more than speculation and supposition to draw a causal connection between defendant's conduct and plaintiff's alleged injury. This deficiency is apparent from the face of the complaint, and it is confirmed even more markedly upon consideration of the evidence presented by defendant. To establish injury in fact, a plaintiff must show an "invasion of a legally protected interest" in a manner that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." Lujan, 504 U.S. at 560. To establish a causal connection, the injury alleged must be "fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court." Id.; see Frank Krasner Enterprises, Ltd. v. Montgomery County, MD, 401 F.3d 230, 235 (4th Cir. 2005). Where a plaintiff relies upon a "conjectural and speculative" or "hypothetical" chain of events to link the defendant's conduct with plaintiff's alleged harm, the court

---

[2] Although defendant relies primarily upon North Carolina law in discussing both constitutional and prudential standing requirements, see Mem. at 14, "[s]tanding to sue in federal court is governed by federal law, even in diversity cases based on state law claims and in actions removed from state court." Kaiser-Flores v. Lowe's Home Centers, Inc., CIV. 5:08-CV45-V, 2009 WL 762198, at *2 n.10 (W.D.N.C. Mar. 19, 2009); see Shavitz v. Guilford County Bd. of Educ., 100 F. App'x 146, 150 n.1 (4th Cir. 2004) (noting that even where a "cause of action arises under state law, the federal standing requirements of Article III still apply"); Wheeler v. Travelers Ins. Co., 22 F.3d 534, 537 (3d Cir. 1994) ("Although this appeal is in a diversity case which was removed to federal district court, we apply federal law in determining [plaintiff's] standing.").

5

lacks subject matter jurisdiction to entertain the lawsuit. Benham v. City of Charlotte, N.C., 635 F.3d 129, 137 (4th Cir. 2011).

As an initial matter, plaintiff's alleged injury is vague and illusory. Plaintiff alleges he is a real estate developer who built certain unspecified "improvements" on two tracts of land in Pamlico County, one on NC Highway 55 and one on NC Highway 304. Am. Compl. ¶ 4. Although plaintiff is not the owner of the land upon which the improvements were constructed, he claims he has suffered "losses of expenses and costs in the construction of said improvements," and he suggests that he is not now able to recover profits that he originally expected to recoup from his work in erecting structures on the two tracts of land. Id. ¶¶ 4, 12.

The causal chain between this alleged injury to expected profits and defendant's mining activities is broken by multiple speculative links and assumptions, not supported by factual allegations in the complaint nor evidence in the record. First, activities and choices of independent third parties, not party to this lawsuit, stand between the alleged losses and defendant's challenged actions. See Frank Krasner Enterprises, 401 F.3d at 235. For example, plaintiff suggests that profits from his development work were expected to come from some unspecified development contract between plaintiff and the landowners, C. R. Holmes Investments Inc. and C.R. H. Investments LLC, who are not parties to the suit. Am. Compl. ¶¶ 4. But, the payment that plaintiff is owed, and the manner in which it is paid, is dependent on the contractual arrangements between plaintiff and that third party, and upon the third parties' performance of that contract. Further, whether the tracts of land at issue could be sold, and the extent and manner of the sale, depends further on the market for the property, the costs of sale and development, taxes, fees, interest rates, and many other economic factors wholly in the hands of third parties not before the court and

6

divorced from the conduct of defendant.

In addition, the speculative and fanciful nature of plaintiff's causation allegations is compounded by the absence of factual allegations linking defendant's mining activities with land subsidence or water salinity on the land on which plaintiff constructed improvements. While plaintiff alleges that defendant's activities caused land and improvements to sink or subside "at or near the mining site" in Aurora, North Carolina, ¶ 7, the court takes notice of the fact that Aurora is approximately 15 miles from the properties identified in the complaint. See Def's Mem. at 4. Thus it is a matter of exceptional speculation, even paranoia, to allege that conduct at defendant's mining site caused land subsidence and water salinity 15 miles away in the subject properties. Accordingly, it is not proper to accept as true plaintiff's conclusory allegation that defendant's conduct in Aurora "caused the subsidence" at the subject properties. Compl. ¶ 9. Absent this conclusory allegation, there is nothing in the complaint to link defendant's conduct with alleged subsidence and salinity on the subject property, much less plaintiff's economic injury.

The court's conclusion about the fanciful nature of plaintiff's theory of causation, and the court's lack of jurisdiction to entertain this suit, is further confirmed by the overwhelming and uncontradicted evidence demonstrating no causal link between defendant's conduct and any subsidence or salinity on the subject properties. As an initial matter, there is no evidence of land subsiding or increasing in salinity on plaintiff's property during the time period at issue in suit. See Lee Decl., ¶¶ 3, 17-21; Terry Decl. ¶4. In addition, there is no evidence that defendant's operations caused any subsidence or increase in salinity on plaintiff's property, approximately fifteen miles removed from defendant's mining activity. See Spruill Decl. ¶¶ 21-23; Wiley Decl. ¶¶ 16-19, 22. Although plaintiff has had the opportunity through the period of discovery and in his deposition

7

testimony to provide some cogent explanation for his theory of causation, he has failed to do so, and instead confirmed the speculative nature of his claims. See e.g. Swiggett Dep. 60:10-17, 67:6-71:12, 137:7-16.

In sum, where plaintiff's lack of standing is apparent from the allegations of the complaint, and the frivolity of plaintiff's position is further confirmed upon consideration of the evidence presented by defendant, plaintiff's suit must be dismissed for lack of subject matter jurisdiction under Rule 12(b)(1).

### b. Prudential Standing

This court also lacks subject matter jurisdiction over plaintiff's suit based upon principles of prudential standing. As noted above, the prudential standing inquiry generally requires determination that plaintiff's complaint falls within the "zone of interests" protected by the law invoked, Elk Grove, 542 U.S. at 12, and this determination must be made with reference to state law where plaintiff asserts state law claims. Gen. Tech., 388 F.3d at 118. Here, although plaintiff does not specify the legal basis for his claims in the complaint, it appears he is asserting a claim for damages under North Carolina law for trespass to property or nuisance. See Compl., ¶ 15; Am. Compl., ¶¶ 4, 12.

To establish a claim for such torts under North Carolina law, plaintiff must allege among other elements, injury and causation. See, e.g., Singleton v. Haywood Elec. Membership Corp., 357 N.C. 623, 627 (2003) (trespass); Pendergrast v. Aiken, 293 N.C. 201, 216 (1977) (nuisance). But, where the alleged injury to the plaintiff is economic in nature, as here, North Carolina courts have established a rule, which guides the court's prudential standing analysis here, that there is no cognizable injury from tortious conduct based upon speculative lost profits. Kitchen Lumber Co.

8

v. Tallassee Power Co., 206 N.C. 515, 174 S.E. 427, 431 (1934) ("Where the profits lost by defendant's tortious conduct proximately and naturally flow from his act, and are reasonably definite and certain, they are recoverable; those which are speculative and contingent are not.").

Where plaintiff here has asserted lost profits which are speculative and contingent on numerous factors beyond defendant's alleged conduct, North Carolina courts would not permit recovery for the claims raised here by plaintiff. See Kitchen, 174 S.E. at 431. Accordingly, prudential standing principles, informed by the contours of North Carolina law, provide an additional basis for dismissal of plaintiff's suit pursuant to Rule 12(b)(1).

2. Exhaustion

Plaintiff's failure to exhaust state remedies is an additional jurisdictional defect which requires dismissal under Federal Rule 12(b)(1). See Sandhill Motors, Inc. v. American Motors Sales Corp., 667 F.2d 1112, 1115 (4th Cir. 1981) (affirming dismissal for lack of subject matter jurisdiction where plaintiff failed to exhaust administrative remedies under North Carolina law). In an action based on diversity, where "a North Carolina court would have declined to entertain the action" due to "a failure to exhaust administrative remedies," the federal court must likewise dismiss the suit for lack of subject matter jurisdiction. Id. (citing Presnell v. Pell, 298 N.C. 715 (1979)).

"Where the legislature has provided by statute an effective administrative remedy, that remedy is exclusive and its relief must be exhausted before recourse may be had to the courts." Presnell, 298 N.C. at 721. "This is especially true where a statute establishes, as here, a procedure whereby matters of regulation and control are first addressed by commissions or agencies particularly qualified for the purpose." Id. "In such a case, the legislature has expressed an intention to give the administrative entity most concerned with a particular matter the first chance to discover

9

and rectify error," and "only after the appropriate agency has developed its own record and factual background upon which its decision must rest should the courts be available to review the sufficiency of its process." Id. at 721-22.

The North Carolina Environmental Management Commission, under the authority of the Secretary of the North Carolina Department of Environment and Natural Resources, Division of Water Resources ("DENR"), is charged with issuing permits for high-volume utilization of surface waters or groundwater, such as defendant's alleged activities here. See N.C. Gen. Stat. § 143-215.15(a). Any "water user who is dissatisfied with a decision of the Commission concerning that user's or another user's permit application or permit may commence a contested case under G.S. 150B-23," providing for administrative remedies under the North Carolina Administrative Procedure Act. N.C. Gen. Stat. § 143-215.15(c). Notably, the statue specifically provides for DENR's review of permits and authority to modify or revoke a permit, upon consideration of (1) "the physical and chemical nature of any impairment of the aquifer or stream, adversely affecting its availability or fitness for other water uses (including public use)," and (2) "injury to public health, safety or welfare which would result if such impairment were not prevented or abated," among other technical factors. N.C. Gen. Stat. § 143-215.15(h).

Here, where plaintiff has effective administrative remedies at his disposal, directly suited to the water-extraction concerns and theories plaintiff raises in this lawsuit, North Carolina law requires plaintiff to seek administrative recourse prior to bringing suit. In particular, defendant applied for groundwater withdrawal permits on April 28, 2011. See Am. Answer, Exh. A. While N.C. Gen. Stat. § 143-215.15(h) provides a basis to thoroughly examine the potential injurious impact of defendant's activities on the subject properties, plaintiff did not timely challenge these

10

permits before DENR, but instead filed this lawsuit. See Wiley Decl. ¶15. Where plaintiff had an opportunity to raise his concerns before DENR upon defendant's application for permits, and to seek judicial review in accordance with the North Carolina Administrative Procedures Act, but failed to do so, this court lacks subject matter jurisdiction to entertain his claims here. See Presnell, 298 N.C. at 721; see also Flowers v. Blackbeard Sailing Club, 115 N.C. App. 349, 353 (1994) (dismissing suit for lack of subject matter jurisdiction where plaintiff failed to exhaust administrative remedies before the Coastal Resources Commission, concerning plaintiff's complaint that defendant's pier encroached on the riparian boundary between plaintiffs' and defendant's property).

In sum the court lacks subject matter jurisdiction over this case due to lack of standing and failure to exhaust administrative remedies, and plaintiff's complaint therefore must be dismissed pursuant to Rule 12(b)(1).[3]

3. Remaining Motions

Where the court lacks subject matter jurisdiction to allow this lawsuit to proceed further, the court denies plaintiff's motion for continuance, motion to compel records, and motion to "expand defendants list." First, allowing a continuance at this point is unwarranted both where plaintiff has had ample time already to retain replacement counsel, and where retention of counsel would be futile in rectifying a fundamentally flawed and frivolous lawsuit. Second, the information sought by plaintiff in his motion to compel records would not alter the court's analysis regarding plaintiff's standing, as plaintiff's relationship with his business partner regarding "joint real estate development projects," Mot. to Compel at 1, merely illustrates one of many convoluted links in the hypothetical and speculative chain of causation linking defendant's conduct with plaintiff's alleged injury.

---

[3] Lacking subject matter jurisdiction, the court does not reach defendant's alternative basis for dismissal based upon the running of the statute of limitations. See Def's Mem. at 21-22.

11

Moreover, the fact that plaintiff seeks to compel records from his business partner "in order to determine if there has been an additional breach of contract" only serves to further confirm that plaintiff's economic losses are the result of contractual relationships and factors much apart from defendant's conduct. Finally, Plaintiff's proposal to expand the list of defendants in this case is not only out of time but also futile, where the proposed new allegations, barely cogent at all, suffer the same deficiencies in standing and exhaustion discussed in the court's analysis above. See Foman v. Davis, 371 U.S. 178, 182 (1962). Accordingly, the court denies plaintiff's motions, and where these motions are without merit the court also denies as moot defendant's motion to strike.

## CONCLUSION

Based on the foregoing, defendant's motion to dismiss for lack of jurisdiction (DE # 27) is GRANTED, and this matter is DISMISSED. The alternative motion for summary judgment (DE #27) is DENIED AS MOOT. The motion to withdraw as attorney (DE #39) is GRANTED. The motions for extension of time, to expand defendant list, and to compel (DE #s 43, 44, 45) are DENIED, and the motion to strike (DE # 46) is DENIED AS MOOT. The clerk is directed to close this case.

So ordered, this the 29th day of October, 2012.

_____
LOUISE W. FLANAGAN
United States District Court Judge